Due to technical difficulties, the entirety of this recording is unavailable. May it please the court. Benjamin North for Jacob Doe. I endeavor to save five minutes for rebuttal. And before I begin with my argument, I'd just like to inform the court that I have a stuttering disability, so it just might take me slightly longer to present my argument. I appreciate the court's patience. Absolutely. This case presents the fundamental question of whether there is any due process interest at all for a public university student in the fourth circuit. Consistent with common sense in the law, the answer must be that there are such interests. And of course, with respect to the university context, the 14th Amendment interest that could be present are liberty and property interest. Beginning with liberty interest, the court should recognize a public university student's liberty interest in this context for several reasons. The first reason is that this court should avoid creating a circuit split with the fifth, sixth, and seventh circuits who have all recognized a liberty interest in this context. And that conclusion is buttressed by the fact that just a plain application of the stigma plus test from Paul versus Davis and its progeny leads to the conclusion that such a liberty interest must be present. There are two prongs, of course, to the stigma plus liberty interest test. The first is that the plaintiff must be stigmatized by the government in some way with charges of serious character defects or immorality. And of course, in this context, where Jacob Doe was labeled a perpetrator of serious misconduct, domestic violence, of course, the stigma part of the stigma plus test is met. The question, therefore, is whether there is the requisite plus. And of course, in this case, there is. John Doe, Jacob Doe, excuse me, he suffered a change in his legal status when he went from a student in good standing to a student suspended for serious misconduct. Mr. North, is there any evidence in the record that your client's transcript actually identified the particular stigma that you referenced? He suffered that is that he was alleged to have been a perpetrator of domestic violence. Judge Diaz, I think. If I recall correctly, there was a transcript notation placed on his record because the state statute in Virginia requires such a notation. But even will will place on him a a stigma going forward whenever he applies to other educational institutions or perhaps on any background check or employer inquiry. I mean, because even if the even if the public records of the university don't identify the stigma, he would be required to say as much in response to a question of that. That's exactly right, Judge Diaz. It's my understanding that on future college applications, grad school applications, certainly if he had any aspirations for a legal career, he would receive questions asking if he had ever been disciplined at a post-secondary institution. He would then be compelled to answer truthfully, yes. So he would have the stigma associated with the fact that the government school determined that he had committed domestic violence. And then that's the stigma part. And then the plus test is he was actually separated from the university and he would have to disclose that his status went from a student in good standing to a student suspended for serious. So can I ask part of the problem, at least for me in this case, is that the record is fairly sparse with respect to the sort of expectations of the students vis-a-vis Virginia Tech. And I get your point that perhaps we should be able to assume that anyone who attends a public university is entitled to expect that if he or she complies with the academic requirements of the university and the conduct requirements of the university, that they won't be arbitrarily suspended or otherwise disciplined. But just by way of example, we don't have the code of conduct of the university in the record, do we? It's not in the complaint, Your Honor. And I think that that question gets to where we are in litigation. So we're at the motion to dismiss stage. At the 12 v. 6 stage, the court is obliged to take its true, all well pleaded allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. So in this case, in this context, it is certainly a reasonable inference, at least to take the liberty interest test first and perhaps then I can move to property. It's a reasonable inference if Jacob Doe was labeled a perpetrator of serious misconduct and separated from the university in the form of suspension. It is a reasonable inference therefrom that he would experience significant difficulties in pursuing his occupation of choice and proceeding with his education and career path. And of course, to take the property interest example, the very fact that Virginia Tech, as so many schools do, have a code of conduct, it's a reasonable inference. If a student pays tuition and complies with the code of conduct, it's a reasonable inference by the fact that there exists the code of conduct and the student participates in that, that the student has an expectation that if he continues to pay tuition, he won't be arbitrarily disciplined. And the reason for that is there's one reason to make a code of conduct as a school, and that's to articulate the very reasons why students might expect to be disciplined. The school does not say, for example, as would be the case and perhaps at Will Employment, the school does not say, here's a code of conduct, here are rules, but also we can discipline you, we can remove you for any reason at all or no reason at all. The school doesn't say that. It says, here's the code of conduct, here are the rules of the institution, you need to follow them, and if you don't follow them, you can be disciplined. And you allege there's a code of conduct? We, I believe, Your Honor, that... You believe? The question is, did you allege in your pleading that there is a code of conduct? My recollection, Your Honor... Recollection? Counsel, your pleadings, you're here today for oral argument, and you recall whether you plead that there was, there is, at Virginia Tech, a code of student conduct. I'll take it you don't know. Is that right? I think the answer to your question is a bit more complicated. You can have a lot of policies. I'm not sure you need a code of conduct to expel someone for many types of conduct. You have a policy of, for example, honesty. Some schools in Virginia, they have a single sanction, for example, for honor violation, single sanction, expulsion, single. And so, I don't know what that is, but that's a fair one. Go ahead, Your Honor. Thank you, Your Honor. So, the district court in this case disagreed with you on the issue of either property or liberty interests. I suppose there obviously is an argument about that, but one other way to dispose of this case is to conclude, decide whether or not the process that was, in fact, given to your client was sufficient. So, why wasn't it? Thank you, Your Honor. And the first thing I would just say in response to that question is, of course, the district court should resolve the question of whether the process was due for the first time, but of course, the court retains the discretion to address the issue. So, let me address your question. Now, when the court looks at whether a plaintiff received the process he was due from the government, the court chiefly applies the Matthews factors. And of course, in this case, we are alleging that Dove did not receive the process he was due for chiefly two reasons. The first is that he did not receive free investigation notice of the charges against him. So, let me ask about that. So, the response, one of the responses to that from the other side is that it's not, it wouldn't be unusual for someone not to initially know what the charges are because the investigating body is doing just that, investigating. And until they can fully investigate what happened, the who, what, when, and where, and why, the parties will necessarily be in the dark as to what the charges are. It's sort of akin to a grand jury investigation. Of course, you don't know what the charges are until the grand jury returns an indictment. So, why should your client have any more process than what is typically due to a criminal defendant? Generally doesn't know the charges until later in the process. Well, your honor, I think for a few reasons. The first reason is obviously a criminal defendant is distinguishable from a public university student because of course, at later stages in the process, there's a much different kind of process that plays out. There's a different burden of proof. There is a different, there are different rules of discovery. There are mandatory disclosures that of course, aren't present in the university context. But to answer your question, it all comes back to the Matthews factors. So, there's a balancing test that the court engages in to assess whether a particular process is required by due process. And applying the Matthews factors here, in the case of a pre-investigation notice, the Matthews factors weigh in favor of is that of course, the private interest in Jacob Doe and his education is of course, high. That interest weighs of course, heavily in Jacob Doe's favor. The second interest that is balanced is the risk of erroneous deprivation. If Jacob Doe is not put on notice at the beginning of the investigation, which is his only kind of pre-hearing opportunity to share his side of the story. If he's not put on notice is exactly what the charges are, he's of course, at a disadvantage. So, there's a risk of erroneous deprivation there. And of course, the government interest, the administrative burden, in other words, weighs relatively lighter. So, what would be the remedy for that kind of a violation? I'm just thinking about that. So, if you're right, then what's the remedy? Because ultimately, I suppose, there was a hearing and the university found against your client. So, what would be the remedy for that kind of a violation that you just talked about? Yeah. So, I think the remedy, of course, under Ex parte Young would be an injunctive relief, if I'm understanding it. Just barring the, preventing the university from disciplining your client? That's correct. The university would theoretically be free to conduct another investigation if it wants to provide the requisite due process. But the injunctive relief would be vacating that particular discipline. And does it matter that, in this case, there was a hearing, there was process, in fact, the hearing was continued at the request of your client. So, by that time, clearly, your client knew what the charges were and the I think the harm is he did not have, the investigation was only open into his allegations against the accuser in that case. Well, that's because your client didn't lodge charges, at least not initially, against his then girlfriend. That is correct. I think the point I'm trying to make is that the investigation wasn't reopened so he could introduce evidence after getting the notice as to the charges against him. It was only an investigation into the charges against the female student in that case. So, the fact that an investigation was reopened isn't material because it wasn't an additional opportunity for him to provide evidence during the investigation. Although your Honor is, of course, right, the hearing was postponed and we can see that at the time of the hearing, he was aware of the charges. I think the key is that his opportunity to provide evidence in advance of the hearing was substantially limited because he wasn't notified of the specific charges that were being investigated at that time. And this is another reason why the court should allow the district court to address this question for the first time because the district court would be in a position to develop a more full factual record to get to, you know, the exact harm that was involved with the lack of pre-investigations. I think we plausibly allege that in the complaint, but, of course, he could get a more full factual record by the district court. And, of course, that's not the only deficiency in the process. We've also alleged Jacob Doe being prevented from presenting impeachment evidence, new allegations that the female accuser made in the hearing for the first time. So the female accuser made additional allegations in the hearing against Jacob Doe and Jacob Doe was prevented from attacking those new allegations of which he was indisputably not on notice, was never on notice for those allegations. And the university prevented him from presenting evidence to attack those allegations. And for those reasons, I see my time is up. So for those reasons, the process is sufficient and the court should recognize the liberty and property interest here in this case. I want to make sure about that issue. You're saying that your client was at the hearing and she testified to something that was additional to what she had claimed before and he was not allowed to speak against that at the hearing? Yes, she alleged that he had basically exerted this influence in their relationship to prevent her from seeing her family and friends. Now, Jacob Doe wanted to provide impeachment evidence to attack that was flatly untrue, but the university prevented him from providing that evidence. I believe in the hearing or after the hearing, he said, I would like to hold the hearing open until I can get the supplement to the record. I don't know if we have that in the pleading, Your Honor, but I would say, again, it all comes back to the reasonable inference. What we do have in the pleading is that he was not allowed to provide this evidence and he didn't know about this allegation until the hearing and even in the appeals process, he wasn't allowed to present the evidence. Virginia law is pretty tough in this in terms of what you have to show in terms of status. Status plus doesn't follow it. We are construing the Virginia lawyers, right? At least, Virginia law has not recognized, if I'm understanding your question correctly, Virginia law has not recognized yet a contract between the university and the students. That's particularly relevant with respect to a property interest. The Virginia Court of Appeals and the Supreme Court of Virginia have not, to my knowledge, stated one way or the other whether there is a contract. There are some circuit court cases that have not answered the question specifically in the case of a public university student. It's more of an open question I would submit with Virginia case law. Certainly, the federal courts in Virginia, I would concede, have been hesitant to make what they see as an expansion of Virginia law and recognize the contract. But of course, in this case, with the property interest, we are not relying on a contractual theory but rather that there was a de facto only discipline for cause theory with respect to the property interest. Just lastly, the question about due process, when you said that he was not allowed to participate in the investigation, isn't that problematic? At least, a person claimed to be a victim goes to the authorities and makes a report, then we'd have to say that the person he or she accuses would have to be notified of the investigation and be kept in touch with the investigation to get a chance to put their side in while they're trying to investigate it. Wouldn't that be a chilling effect for people to come forward? No, I don't think so, Your Honor, at least not to the extent, construing that as part of, let's say, the government's interest here, not to the extent that it would outweigh the private interest in this case. So, consistent with the Fifth Circuit's opinion. You don't have a private interest to interfere with an investigation. The police officers do all the time. They investigate people. They don't call them. Who was the person you said did this? Well, okay, let me call that person. You know, where does this right come from? Where does that decide the law or just your view about it? Well, the right comes from the Matthews test. The Matthews test says that you have a right to come in, in the crucible of the investigation. At what point? I don't know. I guess the real point is in the next day after the first start. When is it? Perhaps I misunderstood your question earlier. Of course, the Supreme Court held in Morrissey versus Brewery that due process is flexible and depends on the circumstance. And when the court is looking at kind of what processes do in a particular circumstance, it balances the private interest. So the interest of the accused versus the government's interest and the risk of a running deprivation. So the court circuit has not yet spoken on this issue. That's what I was asking. Yes. Yes. So I don't think it's a chilling effect, Your Honor. I would agree with the Fifth Circuit's opinion in Walsh when it recognized that there might be somewhat of a chilling effect, but such a chilling effect was not sufficient to outweigh the private interest in providing for, in the Fifth Circuit's case, the ability to question one's accuser at a hearing. So the Fifth Circuit held in Walsh that there needed to be some form of questioning at the hearing and acknowledged there might be a sufficient to outweigh the private interest. I'll end it, but I wasn't talking about a hearing. That's what you were saying. I thought you said he has asked you about due process. You said he wasn't able to participate and give his side during the investigation, but that's fine. All right. Thank you so much. Thank you, Your Honor. Mr. Schnitzler. Good morning, Your Honors. May it please the Court. Nathan Schnitzler on behalf of the athletes who I will collectively refer to as Virginia Tech for ease's sake. I do want to take a moment to recognize my co-counselor here today, Christina Hartman, Hudson McClanahan from the University Legal Counsel Office at Virginia Tech. Your Honors, I think it's very important that we hone in on what is specifically on appeal here in this case. This is a case that is appeal the district judge's ruling on a 12B6 motion. Therefore, we are constrained to the facts that are alleged in the complaint as to whether or not a cause of action has been pled for purposes of a due process claim. Now, I want to be very clear that the issue here is not whether any public university student has a property right or a property interest or liberty interest, but it is whether Jacob Doe alleged facts sufficient to demonstrate a protected liberty interest or property interest in his continued public education. Your Honor, as the district court found, Jacob Doe failed to meet his pleading burden at the 12B6 stage. Nevertheless, even if the court were to decide or even assume that a liberty interest or a property interest exists for continued public education at the university level, which this circuit has done in the past, alternate grounds exist for this court to determine that Jacob Doe not only received due process that he was due, but also that additional grounds exist for dismissing the claims that Jacob Doe brought in this case. And that's important because Jacob Doe submitted official capacity claims and Therefore, his official capacity claim goes strictly to injunctive delete. However, because he also filed individual capacity claims against a number of the individual defendants, those defendants are automatically entitled to qualified immunity, Your Honors, based on this circuit's ruling in the Shepard versus Virginia State case that was ruled, decided in 2021. So, Your Honor, for that reason, Your Honors, for that reason alone, the individual capacity claim with respect to due process can be adjudicated by this court on the qualified immunity grounds. Your Honors, I want to be clear about some of the allegations in the complaint, particularly in light of some of the questioning that was raised with the appellant. And first and foremost, Judge Gregory, you had asked appellant's counsel as to whether or not he had raised the issue of not being able to rebut the alleged new evidence that is accused to raise at the hearing. Your Honor, I would direct the court to the Joint Appendix JA-29. There is no allegation in this complaint that Jacob Doe made any attempt to try to rebut the alleged new evidence at the hearing. The allegation in the complaint is that for the direct knowledge, he could have rebutted that evidence at the hearing, that there had been new allegations made against him about not being able to, I think the accuser alleged she wasn't able to take trips with her family or prevented from seeing her friends. And Jacob Doe alleges that that was the first time those issues that come up is at the hearing. But again, there was no allegation in the complaint that he actually did try to raise or rebut that evidence at the hearing. So I wanted to be very clear about that, Your Honors. Moving then to the part of the matter as to what the district court ruled. First and foremost, I think that the law is, as I mentioned in the Shepard case, the Fourth Circuit decided that it is not clearly established that a university student has a property interest in continued education. And I believe that on the facts of this case, there aren't sufficient allegations as the district court ruled to rise to the level of showing any sort of property interest. And that reason is because I think as Judge Diaz and Judge Breger, what you were alluding to in regard to whether or not the code of conduct is referenced in the complaint, there are references to the existence of a student code of conduct, but there are no references to what any of it says. And so that is what the district court hinged on, I believe, in terms of why it decided to dismiss or decide that there was no property interest here versus its earlier ruling in a similar case, Doe versus Alger, that involved James Madison University. Where in that case, the plaintiff had given extensive allegations that actually spans at least two to three pages, single-spaced text in an amended complaint as to what that student code of conduct and the policies of the university actually said. Here, we're simply left with vague allegations that, oh, that there is this code of conduct and the plaintiff, or excuse me, the appellant is trying to seize on that as being sufficient enough to raise a right to a property. Well, so let me ask you about that. So Virginia Tech is a public university, right? Yes, Your Honor. So why couldn't we take, I assume the code of conduct appears somewhere in the public records. So why couldn't we take judicial notice of the code of conduct? Your Honor, I think you actually could, but we were actually hesitant to do so given where we were at the 12B6 stage. I think as defendants moving for a motion, making a motion to dismiss, it's always with some hesitancy to try to direct the court to documents outside of the complaint. Although there is some leeway for the court to consider some documents, but yes, Your Honor, I believe that those are publicly available records that the court could consider at the motion-based stage. So, but even separate from that, I mean, you're not arguing, are you, that a student can pay tuition at a public university and then the university can arbitrarily decide to dismiss the student, sanction the student without following some process, some policies that indicate the limitations of that authority, right? So that, I mean, I think that's the point is that even if it's not expressed, alleged expressly, that by implication, there necessarily has to be some interest in a student who pays his tuition, who, you know, does well in his coursework and otherwise doesn't commit any egregious violations that he would be entitled to some process. Correct, Your Honor. Judge Gregory, excuse me, Judge Diaz, I'm not arguing. I'll take that as a compliment. I'm not arguing that the university can just arbitrarily dismiss a student, but what, when looking at these policies, and obviously when we're talking about a property interest, there can't be a unilateral expectation, right? The plainest expectation can't just be unilateral property, the expectation to create a property interest. And that's where the district courts that have been looking at this issue very closely, particularly in the Western District of Virginia, have been looking at these policies. And it's because they can be changed by the university, seemingly at will, they can't be the source of any sort of implied contract for purposes of a property interest. And then taking it a step further where there hasn't been a Virginia court decision, particularly at the Court of Appeals or the Supreme Court level that has recognized this right, obviously the federal courts are constrained by the fact that they cannot go and extend Virginia law where the state courts have not actually gone so far to recognize any sort of implied contractual right between a university student and the university. So, Your Honor, moving from there, we submit that this complaint did not satisfy the pleading standard under Iqbal and Quambly to provide sufficient information to demonstrate that the references to the policies were simply just too vague even to give a reasonable inference or the opportunity for the plaintiff to prove that there was a property interest that may exist. Moving next to the liberty interest question, Virginia Tech submits that what the appellant is asking this court to do is really reject prior Fourth Circuit precedent, particularly the Stravinsky case that both parties have addressed in their briefing. And the reason why we think that the appellant is trying to ask this court to sort of reject the reasoning in Stravinsky is our reading of Stravinsky is that the Fourth Circuit looked at that case and compared it to its prior decision in the public professor or public employee. And then in Stravinsky, who was a certain excuse me, in Marshall, the issue is whether there was a liberty interest that may exist there for that public employee. And in Stravinsky, we had a private employee who was elected to the government essentially defamed him. He was going to impact his ability to seek other private employment. So it didn't have a relationship with the government directly. He was, I believe, a sub subcontractor, not three levels down the chain. And so in Stravinsky, the court there really said, look at Marshall and said, look, that that case doesn't apply here. This is not an issue where we have a public employee who is being defamed by the government and then saying that you can no longer maintain that public employment. This is a purely private individual. And under Paul, this is not the realm of liberty interests that are impacted by these kinds of defamatory statements allegedly. And so rather than, as the Paul court said, allowing the Constitution to be a font of tort law, it is that there are there are other remedies for those types of situations, I think, is what the Stravinsky court was identifying. And here, as a student, even if he is a student at a public university, that is not the same type of relationship as a government employee is in with the government, particularly in light of the fact that, you know, we think about in various levels of government, there are additional protections that are provided to the government employees, whether it be a student who's in the university. Does he have any recourse? In Virginia, theoretically, a defamation claim under the Virginia Tort Claims Act. I think that would be a potential remedy under those circumstances, Judge Thacker. But then again, we're not, I think the Paul court was clear that, you know, that's defamation. That's that's not the role of the Constitution to try to correct. That's for state tort law to care of. And that's why it exists. So. And I apologize. So. Again, public public employees with those additional rights, where I think the court has been very clear, the Supreme Court has been very clear, not just in Paul, but in cases decided since Paul versus Davis. We look at some of the prisoner cases that have been decided, looking at liberty interest be created somehow by state law regulations or policies. And while the appellant would argue that that's just melding the property interest and liberty interest question, that's not necessarily what the Supreme Court has said is not appropriate. I think that it would sort of a lot of common sense for the Supreme Court in multiple opinions, reiterate the fact that liberty interest can arise from state law regulations and policies. And yet the same kind of property interest may as well. But there may be distinctions there. And that's where I think Perry versus Sinderman is an app case to consider, because in that case, we had a university professor alleging that there was a de facto policy. So it wasn't a written policy, but there was a de facto policy regarding how tenure was going to be examined for purposes of that faculty member. And so that's where the court was able to find some sort of liberty interest that existed for that faculty member. And again, that goes back to the pleading standard and where we are here. It wasn't an allegation, sufficient allegations to, for the court to address whether or not the references to the student code of conduct and the complaint were sufficient to give rise to either a property interest or liberty interest in this case. Again, even if the court were to assume or find that a liberty or property interest does exist, Mr. Doe received the process he was due as a university student in this case. And this is where references to the complaint are incredibly important. And I will cite the joint appendix because it is so critical for the court to look at how this investigation developed, led into the hearing, and then the appeal that Mr. Doe received. And that's because the alleged altercation, this is at JA-23, the alleged altercation between Mr. Doe and his then-girlfriend occurred in December 2017. It was in that same month that he was provided notice that there was a Title IX investigation that was underway. Doe affirmatively alleges he met with the investigator at least twice. That's at JA-24. He affirmatively alleges he was able to identify during the investigation phase, able to identify at least four witnesses refuting his accuser's claims. That's JA-24, footnote three, and also JA-36. He also alleges that he provided a written statement about the allegations against him. That's at JA-24, 26, and 30. And he also affirmatively alleges that the investigator, Athelide Polidoro, disregarded the dismissal of criminal charges against him. Are there any allegations about the impeachment witnesses that an appellant says he wanted to bring to refute the, you know, control issue he wasn't allowed to bring? There are allegations there. So yes, Judge Sack, I think if I understand your question correctly, he alleged, and I think this would go to not necessarily a notice issue, but the opportunity to be heard, I think is a piece. He did allege that the, when the hearing was continued, it was originally supposed to be in April and it was then continued to later in May, that his, some of his witnesses were not able to appear in person. And that, sorry, that doesn't go to the notice issue, it goes to the opportunity to be heard. But your honor, he doesn't allege that he wasn't able to present those people by phone, by video conference, provide written statements, which actually the Title IX, it permits him, it's supposed to permit him to provide written statements. And so those allegations were lacking that he was actually, he was actually prevented from presenting them in a different means. And perhaps, you know, if he had made that attempt and was denied that, or he might argue that that's not sufficient to be able to only present your witnesses by phone or by written statement, but those allegations aren't here. And again, we're constrained to what Jacob Doe actually, actually alleged. Turning back to the notice issue, Jacob Doe alleges that the investigator disregarded the fact that the criminal charges against him were dismissed and the information from his witnesses that were used during the criminal proceeding. That's at J31. And so that, that inference right there, he's saying the investigator ignored this, right? And so the inference there, the reasonable inference is that he provided that information during the investigation. If the investigator ignored it, he must have attempted to provide it to her and she ignored it during the investigation phase. But finally, your honors, I think this is all sort of not really necessary to get into the weeds because as Judge Gregory pointed out, the charges hadn't actually been brought. There was an investigation going on. He was certainly aware of the allegations. I think, and that's important here as well, that these are terms of art. There are allegations against him. And then there are charges of violations of the student code of conduct. The charges of the violations of the code of conduct were not identified until after he had been part of the investigation, after the investigator prepared a report. And then five, I believe it was approximately five days after he got the he finds out what the actual charges are that will be identified at the hearing. And so he actually had seven days notice of the charges before the original hearing date. And again, the hearing was then continued and he had approximately 54 days, I believe, of notice before the hearing actually occurred. So your honors, for those reasons, under the facts in the complaint, Jacob Doe received notice. And under the Dixon standard, we believe that the allegations in the complaint show that he got an appropriate hearing, a meaningful hearing, a meaningful opportunity to respond by being able to participate. Because again, the only allegations we have about what actually occurred during the hearing is, as Judge Thacker pointed out, he alleges that he wasn't able to present some of his witnesses in person. And then this accuser presented that he doesn't even allege he tried to rebut at the hearing and would prevent him from doing so. So we do believe he received an opportunity to be heard. And so that would present alternative grounds for this court to affirm the district court's ruling. And again, your honors, as I mentioned, as the individual capacity claims, we believe Shepard would foreclose those because of qualified immunity, because all of these events occurred in 2018, three years before Shepard conclusively determined that it is not clearly established that there's a property interest. And I would submit that for the arguments raised on brief and today, there's no clearly established liberty interest in the Fourth Circuit either for purposes of establishing an individual capacity claim under due process. Unless there are other questions, I will yield the rest of my time. Thank you, counsel. Thank you, your honor. Mr. North, you have some time reserved. I'd just like to respond to a few points made about the Appellees and their arguments. First, with respect to a liberty interest, the Appellees raised the case of this court's prior opinion in the Appellees read Stravinsky as bracketing all public employment cases because the Stravinsky court had a line in the opinion about public employment cases not being germane to the analysis in the Stravinsky case. But the Stravinsky case does not go nearly as far as to bracket public employment cases from all other contexts. The key in Stravinsky, as the Appellees raised in their argument, was that the plaintiff in Stravinsky had no formal relationship with the government whatsoever. So when the court was talking about public employment cases are not germane to that case's analysis, the key word is public, not employment. There was no public, there was no formal relationship between the government and the plaintiff in that case. That's why the public employment cases weren't germane. It wasn't because employment cases generally aren't relevant to that analysis. And consistent with the Purdue cases holding in the Seventh Circuit, the opinion written by then Judge Amy Coney Barrett, the stigma plus test, the plain analysis of the stigma plus test, he gets a public university student's liberty interest in this context because he was stigmatized by charge of serious misconduct and his legal status was changed when he went from a student in good standing to one suspended for serious misconduct. And to the extent the Appellees argue that the remedy here is a defamation claim under the Virginia Court of Claims Act, that is not an analogous claim to due process claim, nor would a def... This is not, in other words, a defamation claim in a due process claim might lead to meeting the stigma part of the stigma plus test, for instance, but it wouldn't meet the requisite plus because there has to be, for a due process claim, a change in the legal status. And consistent with the way other circuits have ruled in this context, the change in legal status is present when a student goes from student in good standing to a student suspended for serious misconduct. And lastly, I'd like to judge Gregory's question at the end of my argument. Previously, I understand your question, Your Honor, to be, what is the chilling effect? Is there a chilling effect with regard to pre-investigation notice? So not with respect to the hearing, but with regard to the pre-investigation notice. And I would submit to Your Honor, I don't think there's likely to be a chilling effect simply with providing the accused notice of the charges against him. That does just... Providing the notice of what the charges are to the accused has, I don't think, any tendency, really, to create a chilling effect. The government's already providing generally what the allegations are. The only difference would be adding what the specific elements of the charge are. And so I don't think there's a chilling effect, but I think there's a massive difference when it comes to what the accused student received. It's one thing to be notified what the general allegations are, the facts. It's another thing to be notified of what the whether the conduct meets the definition of the charges. It's not enough to say that these allegations themselves are true. The allegations themselves have to be true, of course, but they also have to meet the specific elements of, for example, domestic violence, sexual harassment, sexual assault, whatever the charges. And if a student is deprived of what those elements are until his entire time to present evidence during the investigation has expired, he's at a significant disadvantage. And for those reasons, balancing the private interest with the government's interest in providing pre-investigation notice, at least as far as that is concerned, though is not given the process he was due. And I would add just as a last point on that note, that the government, when looking at the government's interest, it is, of course, relevant that now, according, pursuant to the Title IX regulations, the government is obligated to provide notice of the specific charges before the investigation. So when we're looking at what is the government's interest, there is clearly very little to no administrative burden. They can do this now. And compared, again, with the weighty private interest in knowing exactly what the charges are before your opportunity to present evidence during the investigation, that weighs in those things. Does the plaintiff have any obligation to allege in his complaint what the response would have been had the charges been lodged earlier in the process? I don't think so, Your Honor, because it comes down to the reasonable inference at the motion to dismiss this. So perhaps it's summary judgment that might be a factor that weighs in favor of the university's summary judgment. After discovery has been conducted and you conduct depositions and you ask Jacob Doe, well, what would you have presented during the investigation if you knew what the charges were? It is sufficient at the pleading stage to say that he was deprived of notice of the charges because the disadvantage when balancing the Matthews factors is clear at that point, because it's a reasonable inference from his lack of notice of the charges that he was not aware of what specifically the charges were against him, of course, and he was not allowed, he was not able, rather, to present evidence specifically attacking the elements of the charge. And my time has expired. Yes, to pinpoint, to make sure I understand, the charge which he was found, maybe use the word guilty, or found there was sufficient evidence to claim that they were verified, that charge, was he aware of that charge 50 days, 54 days before the hearing, that charge? He may have made other charges, but was he aware of the one that he was found sufficient evidence for his expulsion, that charge? He was aware of the charge at the time of the final investigation report, which came before the hearing. I don't recall the specific number of days. 54 days to honor his defense, if he wished to present one, correct? For that charge that he was found guilty of, that charge. Now, for example, a person may have said many things about him, hypothetically, say 10 things, I'm not saying this case, but the one thing, one of those things that was said as an accusation was that the one charge that he was found guilty of that caused the expulsion, was he aware of that one charge 54 days before the hearing? He was aware of that charge, again, at the time of the final investigation report, which I'll give you the benefit out of 54, and you'll add on, you said in an investigation, so it was more than 54 days, right? Well, I think the, I would concede that point, your honor. I would only add that the key here is, as Appleby's conceded in their argument, is that the investigation is the time to present your evidence. So at the time he was, at the time the investigation closed, he could not- Investigation is the time to present your evidence? Is the time to present your evidence to the investigator, to gather your evidence, submit it, because I believe the Appleby's- Investigators is not to adjudicate it, but you said at the hearing, the investigator would decide in person. No, perhaps I'm being imprecise in my speech. I didn't think so. The investigation is the time for students to collect their evidence and submit it to the investigator, and then it's my understanding at the hearing, and I believe Appleby's conceded this point during their argument, at the hearing, the record is limited to what was brought out during the investigation. So at the time of the investigation closing- So you mean to tell me your client couldn't even speak at the hearing? No, your honor, but the evidence that he brought forward during the investigation, that's what the record was limited to. So for example- So are you saying that he couldn't speak to anything that he had not in advance told the investigator? Is that what you're saying? He was not able to present corroborating evidence to points that were not presented to the investigator, is my understanding. And by understanding, I mean that that is the case. And I believe Appleby's conceded that point again in their argument when they said the record was limited to, or something to the effect that the record was limited to the but he could not refer to evidence that was not brought out during the investigation. And of course, even setting the pre-investigation notice aside, for the moment, there were, again, these new allegations that were raised during the hearing that the university refused to consider. But put that aside, but you're representing that he couldn't speak to that at all, right? An officer of the court, you're saying the record is that he could not speak to anything that he had not otherwise told the investigator that he was at his meeting. Is that right? That is my understanding, yes. Okay, and that's in the record, right? That's in the record. I don't know if you put that in our position. Okay, all right. Go ahead. I'll give you 30 seconds. Thank you, Your Honor. Now, at police positions, rejecting any due process interest for public university students essentially comes down to an argument that the government, you, university, should be, and is able to expel tuition-paying students for no reason at all. This would not offend the Constitution. This kind of unchecked government power is repugnant to the Constitution, and for these reasons, and those outlined in our brief, the district court erred in holding that Doe had not alleged the liberty of property interest, and this court should reverse consistent with other circuits who have addressed this issue. Thank you. Counsel, thank you both for your arguments. We'll come down, Greek counsel, to see each other on a final case.
judges: Roger L. Gregory, Albert Diaz, Stephanie D. Thacker